UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SPEEDCONNECT LLC, a Michigan limited liability company, | Case No. 4:13-cv-00083-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| IDAHO FALLS WIRELESS PARTNERSHIP, a District of Columbia general partnership, | |
| Defendant. | |

**INTRODUCTION**

The Court has before it Defendant's Motion to Dismiss (Dkt. 20). Plaintiff, SpeedConnect LLC, a Michigan limited liability company, brought this action against Idaho Falls Wireless Partnership ("IFWP"), a District of Columbia general partnership, seeking declaratory judgment that plaintiff has not violated any right held by defendant or committed any tortious interference with defendant's contractual rights. Plaintiff also requests declaratory judgment that the contractual restrictions on assignment in IFWP's lease agreement are unenforceable.

Defendant argues that the Court lacks personal jurisdiction and venue, and moves to dismiss the case on additional grounds. Defendant also asks the Court to grant Rule 11 sanctions against SpeedConnect. As explained below, the Court finds personal jurisdiction and venue over the Defendant. Additionally, the Court finds no alternative

grounds for dismissal warranted in this case. Finally, because IFWP's request for sanctions was not made separately from its other motions, the Court will not impose Rule 11 sanctions against Plaintiff.

## BACKGROUND

IFWP is a District of Columbia general partnership with its principal place of business in the Washington, DC area. IFWP holds a Broadband Radio Service ("BRS") license from the Federal Communications Commission ("FCC") authorizing it to operate BRS channels in and around Idaho Falls, Idaho. IFWP does not operate any radio transmitters or wireless internet systems. Instead, IFWP leases the right to operate radio frequencies under its BRS license to other parties.

In 1996, IFWP entered into a sublease with Teton Wireless Television, Inc. to operate its BRS channels in Idaho. In 2006, IFWP's lease to Teton Wireless Television, Inc. was assigned to DigitalBridge Communications Corp., a Delaware Corporation, and the prior lease was amended. DigitalBridge was granted *de facto* control of the operation of the BRS channels and IFWP retained the license and *de jure* control of the license.

DigitalBridge also leased other parts of the available spectrum from other license-holders for purposes of providing services to the Idaho Falls market. Under the lease with IFWP, DigitalBridge was required to "tie" the IFWP spectrum with all other spectrum leased by DigitalBridge. The lease provided that "Sublessee may not sell, assign, or otherwise cause or assist in the transfer to any third party of any IFGS, MDS, or LPTV lease or license interests except as a whole including this Agreement to a new wireless

cable operator . . . ." *Exhibit A, section 10(a)*, Dkt. 12. Under this provision, DigitalBridge could not transfer any of its spectrum unless it transferred IFWP's spectrum as part of the package and obtained IFWP's consent.

In 2011, the lease was set to expire, and DigitalBridge sought to extend the term of the lease. The lease was amended and extended for an additional 15 years. The 2011 amendment also included language prohibiting DigitalBridge from assigning any of its spectrum to a third party unless DigitalBridge assigned all of its spectrum to the same third party. *See Exihibit B, section 8(c)*, Dkt. 12-1.

On June 29, 2012, DigitalBridge sold a portion—but not all—of its broadband radio service to SpeedConnect LLC, a Michigan limited liability company. DigitalBridge did not include the IFWP lease as part of the bundle of spectrum leases and licenses sold to SpeedConnect. Prior to the sale, on June 25, SpeedConnect contacted IFWP in an attempt to negotiate a new lease and price for the IFWP spectrum. When negotiations failed, SpeedConnect proceeded to acquire DigitalBridge's other spectrum without the IFWP lease.

On November 30, 2012, IFWP's attorney sent a letter to SpeedConnect seeking information regarding the assets SpeedConnect obtained from DigitalBridge. In the letter, IFWP stated that if SpeedConnect took assignment of any of DigitalBridge's BRS licenses without also taking assignment of the IFWP lease, SpeedConnect intentionally violated IFWP's lease with DigitalBridge. IFWP asserted that if there was a violation of

the lease, IFWP was "ready to pursue all available lawful remedies to rectify this wrongdoing." *Exhibit C* at 3, Dkt. 12-2.

SpeedConnect disputes that it has violated any rights held by IFWP.  It asserts that if the sale of DigitalBridge's assets to SpeedConnect violated the terms of IFWP's lease, IFWP's remedy lies solely with DigitalBridge. SpeedConnect claims it had legitimate reasons not to acquire the IFWP lease from DigitalBridge and that the purchase of other spectrum leases from DigitalBridge does not constitute tortious conduct. SpeedConnect asks the Court to issue a declaratory judgment that SpeedConnect's purchase of some of DigitalBridge's spectrum licenses and leases without the purchase of the IFWP's spectrum does not violate any of IFWP's rights. Additionally, SpeedConnect requests that the Court declare that the contractual restriction on assignment of certain spectrum licenses and leases of DigitalBridge is not legally enforceable.

IFWP moves the Court to dismiss the case for (1) lack of personal jurisdiction and (2) improper venue. If the court finds jurisdiction and venue, IFWP asks the Court to dismiss the case because (3) the doctrine of forum non conveniens warrants dismissal, (4) there is no controversy sufficient to invoke federal court jurisdiction, and (5) the Court should abstain from issuing a ruling under the Declaratory Judgment Act. IFWP also asks that Rule 11 sanctions be imposed against SpeedConnect for failing to name the correct party in the original complaint.

# ANALYSIS

## 1. Personal Jurisdiction

On the defendant's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), SpeedConnect bears the burden of showing that the Court has jurisdiction over the defendant. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because there has not been an evidentiary hearing on the matter, SpeedConnect satisfies its burden by making a prima facie showing that the Court has jurisdiction over the defendant. *Id.* Although SpeedConnect cannot "simply rest on the bare allegations" in its complaint, the Court accepts as true the uncontroverted allegations in SpeedConnect's complaint. *Id.* (internal quotation mark omitted). Furthermore, conflicting statements in the parties' affidavits will be resolved in the plaintiff's favor. *Id.*

Because there is no federal statute which controls the Court's personal jurisdiction in this matter, the Court applies the law of Idaho. *See Fed. R. Civ. Pro.* 4(k)(1)(A); *Schwarzenegger*, 374 F.3d at 800. Idaho's long arm statute is coextensive with the limits of due process. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). Thus, the only question is whether the constitutional standard is met in this case. *Schwarzenegger*, 374 F.3d at 800.

The Due Process Clause of the Fourteenth Amendment allows state courts, and therefore this Court, to exercise personal jurisdiction over an out-of-state defendant if the defendant has "certain minimum contacts with [the state] such that the maintenance of

the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). "Endeavoring to give specific content to [*International Shoe*'s] 'fair play and substantial justice'" standard, the Supreme Court has recognized two categories of cases in which personal jurisdiction exists over a foreign defendant. *Goodyear Dunlop Tires Operations, S.A., v. Brown*, 131 S. Ct. 2846, 2853 (2011). First, a court has specific jurisdiction over a defendant when the defendant's actions within the forum state give rise to the cause of action. *Id.* Second, where a defendant's contacts with the forum are "continuous and systematic," courts may exercise general jurisdiction over the defendant "on causes of action arising from dealings entirely distinct from [the defendant's in-state] activities." *Id.* (internal quotation mark omitted).

### A. General Jurisdiction

SpeedConnect argues that IFWP is subject either to this Court's general or specific jurisdiction. To show general jurisdiction, SpeedConnect must show that IFWP's activities within Idaho are "substantial" or "continuous and systematic." *Id.* If SpeedConnect meets its burden, the burden is IFWP's to "'present a compelling case' that the exercise of jurisdiction would, in fact, be unreasonable." *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 851–52 (9th Cir. 1993); *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The standard for establishing general jurisdiction is "fairly high," and requires that the defendant's contacts be of the sort that approximate physical presence. *See Bancroft*

& *Masters, Inc. v. Augusta Nat. Inc*., 223 F.3d 1082, 1086 (9th Cir.2000) (citing *Brand v.*

*Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir.1986). Factors to consider include whether

the defendant makes sales, solicits or engages in business in the state, serves the state's

markets, designates an agent for service of process, holds a license, or is incorporated in

the state. *Id.* General personal jurisdiction case law traditionally involves corporate

defendants whose contacts with the state "constitute doing business in" the state. *Id.*

IFWP holds a license that permits the operation of BRS channels in and around the

area of Idaho Falls, Idaho. Although its FCC license does not grant IFWP actual

ownership of the spectrum or channels in Idaho,[1] it is "apparent that the granting of a

license by the Commission creates a highly valuable property right, which, while limited

in character, nevertheless provides the basis upon which large investments of capital are

made and large commercial enterprises are conducted." *Yankee Network v. F.C.C.*, 107

F.2d 212, 217 (D.C. Cir. 1939). It is clear, without reaching the issue as to whether a BRS

license constitutes property in Idaho for purposes of establishing jurisdiction, that the

FCC license gives IFWP valuable rights in the Idaho broadband market that can be used

to gain substantial revenue.

The only way that IFWP can generate revenue from the FCC license is by serving

the state's markets or leasing the license to another party that serves the state's markets.

In short, since IFWP's only asset is its BRS license, the only way it can generate revenue

---

[1] The Communications Act denies FCC licensees any property rights in spectrum. Licensees enjoy "the
use of [radio] channels, but not the ownership thereof," and licenses are not to be "construed to create any
right, beyond the terms, conditions, and periods of the license." 47 U.S.C.A. § 301.

is through the Idaho market. Since 1996, IFWP has exclusively utilized the Idaho market to generate substantial revenue. The Court is inclined to hold that any business that exclusively generates profit from an Idaho market in such a way is "doing business in" Idaho, not merely with Idaho, sufficient to meet the minimum contacts standard for general jurisdiction. *See Bancroft*, 223 F.3d at 1086. However, as explained below, the Court finds IFWP's contacts with Idaho are more than sufficient for the Court to exercise specific jurisdiction over IFWP. Accordingly, the Court does not need to make a ruling on general jurisdiction in this case.

### B. Specific Jurisdiction

The Ninth Circuit analyzes specific jurisdiction according to a three-prong test: (1) the defendant must perform an act or consummate a transaction such that he "purposefully avails himself of the privilege of conducting activities in the forum;" (2) the claim must relate to or arise out of the defendant's activities in the forum; and (3) the court's exercise of jurisdiction must be reasonable. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205–06 (9th Cir. 2006); *Schwarzenegger*, 374 F.3d at 802. Plaintiff bears the burden of satisfying the first two prongs of the test. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). If the plaintiff succeeds in satisfying the first two prongs, the burden shifts to the defendant to come forward with a compelling case that the exercise of jurisdiction would not be reasonable. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir.2008) (internal cite omitted).

### (1) Purposeful Availment

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto*, 539 F.3d at 1016 (citing *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). Parties "who reach out beyond one state and create continuing relationships and obligations with citizens of [the forum state]" are subject to personal jurisdiction in that forum. *Burger King Corp.*, 471 U.S. at 473. This requirement is satisfied if the defendant "has taken deliberate action" toward the forum state. *Ballard v. Savage*, 65. F.3d 1495, 1498 (9th Cir. 1995). It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are "purposefully directed" toward forum residents. *Id.* (citing *Burger King Corp.*, 471 U.S. at 476).

IFWP argues that it is a passive company that has directed no activity toward Idaho. IFWP asserts that it also has had no interaction with residents of Idaho, and its sole activity has been interaction with DigitalBridge, whose corporate offices are in Virginia. As noted above, however, leasing an FCC license exclusively for an Idaho market is the type of affirmative conduct which promotes business within Idaho's market. By obtaining rights to spectrum specifically located in Idaho, IFWP has "taken deliberate action" to gain revenue from Idaho. Furthermore, IFWP is not required to have actual physical contact with Idaho, so long as its efforts have been "purposefully directed" toward the Idaho residents. *Id.* IFWP's business model is entirely geared towards generating revenue from valuable rights to an Idaho market, and IFWP can only generate revenue if its lessee

provides services to Idaho residents. IFWP's efforts are purposefully directed at Idaho. Thus, the first prong of the specific jurisdiction test is satisfied.

### (2) Relatedness

The next requirement for specific jurisdiction is that the claim asserted in the litigation arises out of the defendant's forum related activities. *See Yahoo! Inc.*, 433 F.3d at 1205–06. "[A] single forum state contact can support jurisdiction if the cause of action arises out of that particular contact of the defendant with the forum state." *Menken*, 503 F.3d at 1060.

Here, SpeedConnect's request for declaratory judgment arises directly from IFWP's deliberate action to generate revenue through controlling and leasing rights to operate spectrum in Idaho. IFWP sought to maintain control over all of DigitalBridge's BRS leases and licenses in Idaho through provisions of its lease. When SpeedConnect took assignment of some of DigitalBridge's BRS licenses without also taking assignment of the IFWP lease, IFWP wrote a letter asserting that SpeedConnect may have intentionally violated the lease with DigitalBridge. *Exhibit C*, Dkt. No. 12-2. SpeedConnect seeks resolution of the controversy over the lease provisions. Since the lease is IFWP's contact with Idaho and the claim involves that lease, the cause of action arises out of IFWP's forum related activities. Accordingly, the second prong of specific jurisdiction is satisfied.

### (3) Reasonableness

Because SpeedConnect satisfied the first two prongs, the burden shifts to the

IFWP to "present a compelling case that the exercise of jurisdiction would not be

reasonable." *See Boschetto*, 539 F.3d at 1016. To determine the reasonableness of

exercising specific jurisdiction over a nonresident defendant, the court considers the

following factors:

> (1) the extent of the defendant's purposeful interjection into the
> forum state's affairs; (2) the burden on the defendant of defending in
> the forum; (3) the extent of conflict with the sovereignty of the
> defendant's state; (4) the forum state's interest in adjudicating the
> dispute; (5) the most efficient judicial resolution of the controversy;
> (6) the importance of the forum to the plaintiff,s interest in
> convenient and effective relief; and (7) the existence of an
> alternative forum.

*See Menken*, 503 F.3d at 1057 (citing *Burger King Corp.*, 471 U.S. at 476–477).

The first factor is largely co-extensive with the purposeful availment prong.

Because the Court already established that the IFWP purposefully directs activity at

Idaho that promotes the transaction of business within Idaho's market, the Court finds

that this factor weighs in SpeedConnect's favor.

Regarding the second factor, the Court acknowledges that IFWP, as a District of

Columbia general partnership with no partnership members in Idaho, will be burdened by

litigating this case in Idaho. However, "with the advances in transportation and

telecommunications and the increasing interstate practice of law, any burden is

substantially less than in days past." *Menken*, 503 F.3d at 1062 (quoting *CE Distrib., LLC

v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)). Indeed, the Ninth Circuit

provides that even where a defendant must travel from a foreign country, "this factor is

not dispositive" as to the reasonableness of exercising personal jurisdiction. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002) (citing *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)). Therefore, although this factor weighs in IFWP's favor, the Court does not find it wholly persuasive.

Turning to the third factor, IFWP presents no argument concerning the extent of conflict with the District of Columbia's laws or its interest in adjudicating the suit. Regarding the fourth factor, IFWP asserts that Idaho has no interest in adjudicating this suit. On the contrary, Idaho has an unquestioned interest in providing effective means of redress for contract claims that exclusively involve Idaho markets and Idaho residents. The resolution of the present controversy will have a direct effect on Idaho broadband services and Idaho residents. Therefore, the Court finds that this factor weighs in favor of exercising jurisdiction.

In evaluating "the most efficient resolution" factor, the Ninth Circuit has "looked primarily at where the witnesses and the evidence are likely to be located." *CoreVent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). IFWP argues that the lease in question was negotiated in Washington, DC and Virginia, and witnesses and evidence are in those locations. SpeedConnect asserts that witnesses in this case are likely to include consumers in Idaho affected by IFWP's lease agreement with DigitalBridge and that no forum contains the majority of witnesses or evidence. Assuming that evidence of Idaho's broadband markets and witnesses from Idaho will be used, there is no forum that is the most efficient for resolution of this case. This factor is neutral.

Regarding the sixth factor, SpeedConnect argues that the forum is convenient because witnesses and evidence will be drawn from Idaho. IFWP asserts that Virginia is an alternate forum that will satisfy SpeedConnect's interests just as well as Idaho because SpeedConnect will have to travel to either forum. The Court does not find that this forum is especially efficient for SpeedConnect and, therefore, this factor weighs in favor of IFWP.

Regarding the final reasonableness factor, SpeedConnect bears the burden of proving the unavailability of an alternative forum. *CoreVent Corp.*, 11 F.3d at 1490. SpeedConnect has failed to meet this burden; it could bring this action in the District of Columbia or Virginia. Therefore, this factor weighs against exercising personal jurisdiction over IFWP. *See CE Distrib.*, 380 F.3d at 1112. Like factors one and two, though, this factor carries very little weight. As stated above, it may be more costly and inconvenient for the Defendant to litigate in Idaho, but this is not an unreasonable burden.

Weighing all seven factors, the Court concludes that IFWP has not met its burden of showing that the exercise of jurisdiction would be unreasonable. *See Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir. 1998) (finding that defendant failed to present a compelling case that exercise of jurisdiction in the forum state was unreasonable, even though some factors weighed in defendant's favor). Indeed, "[t]he only case in which the Supreme Court has held that these factors determined the question of personal jurisdiction was in a suit between two foreign corporations in which the Court divided evenly over whether the minimum contacts were sufficient." *Menken*, 503 F.3d at

1063 n. 1 (Bybee, J., concurring) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 107 (1987)). Accordingly, the Court denies IFWP's motion to dismiss for lack of personal jurisdiction.

## 2.  Venue

IFWP also moves to dismiss SpeedConnect's complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). A civil action wherein jurisdiction is founded solely on diversity of citizenship may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the event or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Plaintiffs bear the burden of showing that venue is properly laid in the instant forum. *See Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir. 1979). There is a strong presumption in favor of the plaintiff's forum choice. *See Ravelo Monegro v. Rosa,* 211 F.3d 509, 513 (9th Cir. 2000).

SpeedConnect asserts that venue is established over IFWP, as a general partnership, under §1391(b)(1). "For all venue purposes . . . an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2). As a general partnership, IFWP is an entity with the capacity

to be sued as contemplated in § 1391(c)(2). Under § 1391(c)(2), IFWP resides within this judicial district because, as discussed above, it is subject to this Court's personal jurisdiction. Because IFWP is a resident of the District of Idaho for venue purposes, the Court finds that venue is proper under §1391(b)(1). Accordingly, IFWP's motion to dismiss for lack of venue is denied.

### 3. Forum Non Conveniens

IFWP also seeks relief on the basis of forum non conveniens. Under the doctrine of forum non conveniens, the Court has discretion to dismiss a case where "litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1142 (9th Cir. 2001). The defendant "bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food*, 303 F.3d at 1118; *see Lueck*, 236 F.3d at 1142. The Ninth Circuit advises that forum non conveniens is "an exceptional tool to be employed sparingly, [not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).

### A. Adequate Alternative Forum

The first requirement for a forum non conveniens dismissal is that an adequate alternative forum is available to the plaintiff. An alternative forum exists "when defendants are amenable to service of process in the foreign forum." *Dole Food*, 303 F.3d at 1118; *See Lueck*, 236 F.3d at 1143 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235,

254 n. 22 (1981)). Furthermore, "a foreign forum is adequate when it provides the plaintiff with a sufficient remedy for his wrong." *Id.*

IFWP argues that SpeedConnect is amenable to process in Virginia. In an email to IFWP, SpeedConnect offered to negotiate a lease with IFWP through SpeedConnect's Virginia attorney. *Reply Dec.* at ¶8, Dkt. No. 26-1. SpeedConnect stated that its Virginia attorney handles leasing matters for it. *Exhibit A* at 8, Dkt. No. 26-1. Because SpeedConnect was willing to use its Virginia attorney to negotiate regarding the BRS lease that is the subject of this suit, it has contacts related to this lease in Virginia. Furthermore, SpeedConnect used its Virginia attorney to handle the leases of DigitalBridge's other BRS licenses. *See Exhibit D*, Dkt. 26-1. Those licenses are directly related to the present suit. Thus, SpeedConnect's business transactions in Virginia are sufficient under Va. Code § 8.01-328.1 for Virginia to establish personal jurisdiction over SpeedConnect. Additionally, Virginia provides SpeedConnect with a forum to bring this action. If suit is brought in Virginia, SpeedConnect will have an adequate remedy.

### B. Balance of Private and Public Interest Factors

In weighing the relevant interest factors, IFWP has a heavy burden of showing that suit in Idaho results in "oppressiveness and vexation ... out of all proportion" to SpeedConnect's convenience. *Piper*, 454 U.S. at 241, (quoting *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). "[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Id.* at 255.

### *(1) Private Interest Factors*

The factors relating to the private interests of the litigants include:

> (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206–07 (9th Cir. 2009) (quoting

*Lueck*, 236 F.3d at 1145). The Court will look to all of the factors to arrive at a "balanced

conclusion." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1229 (9th Cir.

2011) *cert. denied*, 133 S. Ct. 1996 (U.S. 2013).

Regarding the first factor, neither of the parties in this suit are residents of Idaho.

Accordingly, SpeedConnect's choice of forum is entitled to "less deference;" however,

"less deference is not the same thing as no deference." *Id.* at 1227 (quoting *Ravelo*

*Monegro*, 211 F.3d at 514). Additionally, many of the witnesses in this case reside in

Virginia where the original lease was negotiated. However, as addressed above,

SpeedConnect asserts that witnesses in the case are likely to include consumers in Idaho

affected by IFWP's lease agreement with DigitalBridge. Because the alleged restraint of

trade involves the Idaho market, witnesses from Idaho may be necessary. Accordingly,

this factor is neutral.

Turning to the second factor, Idaho is not a convenient forum for either party.

IFWP is primarily located in Virginia, with partners in Texas, Florida, and Wisconsin.

SpeedConnect is located in Michigan. Both parties will have to travel to the forum.

Though the cost of travel is great for both parties, the costs will be similar for SpeedConnect in Virginia and will not be greatly reduced for IFWP in Virginia because most of its partners will still have to travel from out of state. Rather than clearly supporting dismissal, this is a neutral factor. *See Carijano*, 643 F.3d at 1230–31; *Boston Telecomms.*, 588 F.3d at 1208 (finding the convenience factor to be neutral where similar logistical considerations would apply in either forum).

Regarding the third factor, IFWP argues that there is no evidence or sources of proof in Idaho. Though much of the evidence regarding IFWP's lease provision with DigitalBridge is in Virginia, the Court's "focus should not rest on the number of witnesses or quantity of evidence in each locale." *Lueck*, 236 F.3d at 1146. Rather, the court should evaluate "the materiality and importance of the anticipated [evidence and] witnesses' testimony and then determine[ ] their accessibility and convenience to the forum." *Gates Learjet*, 743 F.2d at 1335–36. Because this suit involves restraint of trade effecting Idaho, much of the evidence of the effects of the lease provision will be felt in Idaho. The evidence that is in Idaho could prove to be highly material to the resolution of this controversy. Therefore, this factor weighs against a change in venue.

The fourth factor also weighs against dismissal. IFWP has not shown, nor does it represent, that any witness is unwilling to testify in Idaho. However, IFWP does argue, under the fifth factor, that the cost of bringing witnesses to trial will be great. Since many of the witnesses are located in and around Virginia, this factor militates toward a change of venue.

Turning to the sixth factor, both parties agree that the judgment of this court would be enforceable. Therefore, this factor weighs against a change of venue.

Regarding the final factor, IFWP argues that nothing makes this trial easy, expeditious, or inexpensive in Idaho. SpeedConnect asserts it is also true that nothing makes this trial easy, expeditious, or inexpensive in Virginia. Though trial in Virginia would be equally burdensome for SpeedConnect, it would not be as difficult or expensive for IFWP. Accordingly, this factor weighs towards a change of venue.

### (2) Public Interest Factors

The Court must also consider public interest factors related to the case. The public factors to be considered include: "(1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomms.*, 588 F.3d at 1211(quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1181 (9th Cir. 2006)).

Public policy in this case weighs in favor of Idaho. As noted above, Idaho has a strong interest in a suit involving restraint of trade that specifically affects Idaho markets. Idaho consumers and broadband users will be affected by the outcome of this suit. The suit is based on a defense to a potential intentional tort or violation of contract claim, and, as such, will likely be governed by the common law of Idaho, Virginia, or the District of Columbia. "In a diversity case, the district court must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000). In

resolving a conflict of law issue, Idaho, like most states, applies the most significant

relationship test. *Seubert Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 651

(Idaho 1995). Under this test, the factors for a tort claim or contract claim could point to

Virginia or District of Columbia as having the most significant relationship with the

issues of this suit. However, because "there is no arguably applicable law that would end

the forum non conveniens inquiry," the Court does not need to make a choice of law

determination at this point. *Lueck*, 236 F.3d at 1148. Regardless, the Court is more than

capable of adjudicating disputes under either state's common law. Furthermore, the

burden on local courts is likely to be the same in Idaho and Virginia, and the cost will be

similar. Overall, the public factors weigh against a change of venue.

### (3) Weighing the Factors

The private factors based on convenience and residence of the parties favor IFWP,

while the enforceability of the judgment, location of evidence, and witness factors are

either neutral or weigh against changing venue. All of the public interest factors are

neutral or weigh against dismissal. Taken together, the factors fail to "establish ...

oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's

convenience." *Piper*, 454 U.S. at 241 (quoting *Koster*, 330 U.S. at 524); *Dole Food*, 303

F.3d at 1118 ("The plaintiff's choice of forum will not be disturbed unless the 'private

interest' and 'public interest' factors strongly favor trial in the foreign [forum]."). They

also fail to outweigh the deference owed to SpeedConnect's chosen forum. Therefore,

IFWP's request for dismissal under forum non conveniens is denied.

**4. Justiciable Controversy**

IFWP argues that there is no controversy in this case sufficient to invoke federal jurisdiction. Prior to hearing a case under the Declaratory Judgment Act, a Court must first determine if there is "an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (citing *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 239–40 (1937)). "A 'controversy' in this sense must be one that is appropriate for judicial determination." *Aetna Life Ins. Co. of Hartford*, 300 U.S. at 240–41. The Court must find that there is a "real and substantial controversy admitting of specific relief." *Id.*

Here, there is an actual controversy appropriate for judicial determination. In its initial letter to SpeedConnect, dated November 30, 2012, IFWP claimed that SpeedConnect's taking assignment of some of DigitalBridge's licenses was "an intentional violation of the Partnership's Lease with [DigitalBridge]." *Exhibit C* at 3, Dkt. No. 12-2. IFWP claims the purpose of the letter was only to find out if SpeedConnect had taken assignment of the lease with DigitalBridge, and it was not intended to threaten litigation. However, in the letter, IFWP made it clear that it stood "ready to pursue all available lawful remedies to rectify this wrongdoing." *Exhibit C* at 3, Dkt. No. 12-2. Clearly, at the time this suit was filed, there was a controversy as to the applicability of the DigitalBridge lease provisions that could be resolved through a decree. Since the case was filed, IFWP sent a letter to SpeedConnect stating that there had been "no final decision by the Partnership as to what course of action to take in connection with the

matter of its license." *Exhibit 3* at 16, Dkt. No. 5-2. This letter did not say that no action would be taken, nor did it resolve the controversy of this suit. Under these circumstances, there is still an actual controversy and the Court has jurisdiction under Article III.

**5. Discretion Under the Declaratory Judgment Act.**

Lastly, IFWP asks the Court to exercise its discretion to dismiss a declaratory judgment claim. The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Supreme Court has described the Declaratory Judgment Act as "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

When a district court has discretion to dismiss or retain a declaratory judgment claim, guidance for making that determination is found in *Brillhart* and its progeny. *Dizol*, 133 F.3d at 1223. The primary factors a court should consider are: (1) avoiding needless determination of state law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation. *Id.* at 1225. "Essentially, the district court 'must balance concerns of judicial administration, comity, and fairness to the litigants.'" *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (quoting *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)).

Regarding the first *Brillhart* factor, this controversy is likely to be resolved under state law.[2] In similar cases, where "the sole basis of jurisdiction is diversity of citizenship," the Ninth Circuit has stated that "the federal interest is at its nadir." *Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1371 (9th Cir. 1991) *overruled on other grounds* by *Dizol*, 133 F.3d 1220. Here, where the case could be decided under Virginia or District of Columbia law, and no compelling federal interests are at stake, the first *Brillhart* factor is especially strong.

Turning to the second *Brillhart* factor, the Ninth Circuit has described this factor as relating to "the 'defensive' or 'reactive' nature of a federal declaratory judgment suit." *Digregorio*, 811 F.2d at 1254 n. 4. If a declaratory judgment suit is "defensive or reactive" or it is merely to obtain "a tactical advantage," that would justify a decision not to exercise jurisdiction. *Cont'l Cas. Co.*, 947 F.2d at 1371.

Here, each party contends that the other is engaged in forum shopping. IFWP argues that SpeedConnect has chosen Idaho because it is inconvenient for IFWP, as all of its partners reside far from Idaho. SpeedConnect argues that IFWP seeks to have the case dismissed merely so it can gain tactical advantage in Virginia. The Court "declines the parties' invitation to referee their finger-pointing match." *R.R. St. & Co. Inc. v. Transp. Ins. Co.*, 656 F.3d 966, 981 (9th Cir. 2011). Filing a lawsuit required SpeedConnect to choose a forum. Merely filing a suit "in anticipation of state court litigation, is not in

---

[2] SpeedConnect argues that Federal anti-trust law will also be at issue in this case. The Court does not decide choice of law at this time. Even were federal law to govern, however, the Court is "not [] required to view the source of law as the dispositive factor." *Transamerica Occidental Life Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1255 (9th Cir. 1987).

itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 391 (5th Cir. 2003). IFWP has offered no indication that SpeedConnect will have a perceived tactical advantage from litigating in a federal forum. At most, Idaho provides SpeedConnect with a neutral forum with jurisdiction to hear its case. SpeedConnect was also not reactive in filing in Idaho because, at the time of filing, there was no alternative state court suit. Overall, SpeedConnect's choice of forum does not rise to the level of forum shopping discouraged by *Brillhart*.

The final *Brillhart* factor is mainly concerned with whether the questions in the controversy can "better be settled in the proceeding pending in the state court." *State Auto Ins. Companies v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000) (quoting *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495 (1942)). Here, there is no pending state court proceeding for the Court to consider, "but the absence of a parallel state proceeding is not necessarily dispositive; the potential for such a proceeding may suffice." *Golden Eagle Ins. Co. v. Travelers Companies*, 103 F.3d 750, 754 (9th Cir. 1996) *overruled on other grounds* by *Dizol*, 133 F.3d 1220. IFWP asserts that the instant case might not resolve all defenses or eliminate all possible claims involving these parties. Though that might be the case, IFWP provides no evidence of a potential alternative proceeding that could be brought.  The instant controversy can likely be resolved by a determination of the applicability and legality of IFWP's lease provision in relation to SpeedConnect.

Taking into account all three *Brillhart* factors, the Court will not exercise its discretion to dismiss under the Declaratory Judgment Act. The only factor in favor of dismissal is needless determination of state law issues. The Ninth Circuit has recognized that "needless determination of state law issues alone may support [dismissal]." *R.R. St. & Co. Inc.*, 656 F.3d at 975; *See Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802–04 (9th Cir. 2002) (affirming remand of a declaratory judgment action to avoid needless determination of state law issues even in the absence of a similar state court proceeding). However, given that there is no parallel pending litigation and SpeedConnect gains little or no tactical advantage by choosing Idaho, the Court does not find that this factor alone warrants dismissal. Accordingly, the case will not be dismissed under the Court's discretion under the Declaratory Judgment Act.

## 6. Sanctions

IFWP contends that SpeedConnect violated Rule 11(b)(3), which states, in relevant part, that by presenting the court with a written pleading, an attorney certifies that, to the best of his or her knowledge, information and belief, formed after a reasonable inquiry, the factual contentions in the pleading have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further discovery. A motion for sanctions pursuant to Rule 11 "must be made separately from any other motion and must describe the specific conduct that allegedly violates" the rule. F.R.C.P. 11(c)(2). Moreover, "the motion ... must not be filed or presented to the court if the challenged

paper . . . is withdrawn or appropriately corrected within 21 days after service or within

another time the court sets." *Id.*

Though IFWP gave SpeedConnect the required opportunity to remedy the alleged

wrong before filing a motion, IFWP failed to file its motion separately from its response

to SpeedConnect's complaint. Accordingly, Rule 11 sanctions are inappropriate.

**ORDER**

**IT IS ORDERED THAT:**

1.      Defendant's Motion to Dismiss (Dkt. 20) is **DENIED**.

2.      Defendant's request for sanctions to be imposed under Rule 11 (Dkt. 20) is

**DENIED**.

DATED: July 1, 2013

B. Lynn Winmill
Chief Judge
United States District Court